UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION
DOCKET NO. 3:14-cv-00396-MOC

| | | |
|---|---|---|
| **RICHARD EMILY JOINES,** | ) | |
| | ) | |
| Plaintiff, | ) | **MEMORANDUM OF DECISION** |
| | ) | and |
| Vs. | ) | **ORDER** |
| | ) | |
| **CAROLYN W. COLVIN, Acting Commissioner of** | ) | |
| **Social Security,** | ) | |
| | ) | |
| Defendant. | ) | |

**THIS MATTER** is before the court on the parties' cross motions for Summary

Judgment. (##12, 13). Having carefully considered such motions and reviewed the pleadings, the

court enters the following findings, conclusions, and Order.

## FINDINGS AND CONCLUSIONS

### I.      Administrative History

Plaintiff Richard Joines applied for Title II Disability Insurance Benefits and Title XVI

Supplemental Security Income in December 2010, alleging an onset date of November 23, 2009.

His claim was denied initially and again upon reconsideration. Plaintiff requested a hearing,

which was held on January 24, 2013 in Fayetteville, North Carolina before Administrative Law

Judge ("ALJ") McArthur Allen. At that hearing, Plaintiff was represented by counsel. An

unfavorable decision was returned on March 13, 2013. Plaintiff requested review of this decision

by the Appeals Council, but such request was denied on May 22, 2014, making the ALJ's

decision the final decision of the Commissioner of Social Security ("Commissioner").

Thereafter, Plaintiff timely filed this action.

## II.    Factual Background

It appearing that the ALJ's findings of fact are supported by substantial evidence, the undersigned adopts and incorporates such findings herein as if fully set forth.  Such findings are referenced in the substantive discussion which follows.

## III.    Standard of Review

The only issues on review are whether the Commissioner applied the correct legal standards and whether the Commissioner's decision is supported by substantial evidence. Richardson v. Perales, 402 U.S. 389, 390 (1971); Hays v. Sullivan, 907 F.2d 1453, 1456 (4th Cir. 1990).  Review by a federal court is not de novo, Smith v. Schweiker, 795 F.2d 343, 345 (4th Cir. 1986); rather, inquiry is limited to whether there was "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Perales, 402 U.S. at 401 (internal citations omitted). Even if the undersigned were to find that a preponderance of the evidence weighed against the Commissioner's decision, the Commissioner's decision would have to be affirmed if supported by substantial evidence.  Hays, 907 F.2d at 1456.

The Fourth Circuit has articulated the following standard relevant to substantial evidence review:

> the district court reviews the record to ensure that the ALJ's factual findings are supported by substantial evidence and that its legal findings are free of error. If the reviewing court decides that the ALJ's decision is not supported by substantial evidence, it may affirm, modify, or reverse the ALJ's ruling with or without remanding the cause for a rehearing. A necessary predicate to engaging in substantial evidence review is a record of the basis for the ALJ's ruling. The record should include a discussion of which evidence the ALJ found credible and why, and specific application of the pertinent legal requirements to the record evidence. If the reviewing court has no way of evaluating the basis for the ALJ's decision, then the proper course, except in rare circumstances, is to remand to the agency for additional investigation or explanation.

Radford v. Colvin, 734 F.3d 288, 295 (4th Cir. 2013) (internal citations and quotations omitted).

When considering cross-motions for summary judgment, the court "examines each motion separately, employing the familiar standard under [Fed. R. Civ. P. 56]." Desmond v. PNGI Charles Town Gaming, L.L.C., 630 F.3d 351 (4th Cir. 2011); Rossignol v. Voorhaar, 316 F.3d 516, 523 (4th Cir. 2003) (the Court reviews each motion separately on its own merits in order to "determine whether either party deserves judgment as a matter of law") (internal citations omitted).

## IV. Substantial Evidence

### A. Introduction

The court has read the transcript of Plaintiff's administrative hearing, closely read the decision of the ALJ, and reviewed the extensive exhibits in the administrative record. The issue is not whether the court might have reached a different conclusion had it been presented with the same testimony and evidentiary materials, but whether the decision of the ALJ is supported by substantial evidence. For the reasons explained herein, the court finds that it is.

### B. Sequential Evaluation

A five-step process, known as "sequential" review, is used by the Commissioner in determining whether a Social Security claimant is disabled. The Commissioner evaluates a disability claim under Title II pursuant to the following five-step analysis:

    a.    An individual who is working and engaging in substantial gainful activity will not be found to be "disabled" regardless of medical findings;

    b.    An individual who does not have a "severe impairment" will not be found to be disabled;

    c.    If an individual is not working and is suffering from a severe impairment that meets the durational requirement and that "meets or equals a listed

> impairment in Appendix 1" of Subpart P of Regulations No. 4, a finding of "disabled" will be made without consideration of vocational factors;

d.     If, upon determining residual functional capacity, the Commissioner finds that an individual is capable of performing work he or she has done in the past, a finding of "not disabled" must be made;

e.     If an individual's residual functional capacity precludes the performance of past work, other factors including age, education, and past work experience, must be considered to determine if other work can be performed.

20 C.F.R. § 404.1520(b)-(f). In this case, the Commissioner determined Plaintiff's claim at the fifth step of the sequential evaluation process.

## C. The Administrative Decision

With an alleged onset date of November 23, 2009, the issue before the ALJ was whether Plaintiff was disabled between that date through the date of decision. At Step One, the ALJ found that Plaintiff had not engaged in substantial gainful activity since his alleged onset date and that he met the insured status requirements for Title II benefits through December 31, 2012. (Tr. 20). At Step Two, he determined that Plaintiff had the severe impairments of degenerative disc disease, disc herniation of the cervical and lumbar spine, and history of substance abuse (for alcohol, marijuana, and crack cocaine). (Tr. 22). He found at Step Three that Plaintiff did not meet a disability listing. (Tr. 23). At Step Four, the ALJ found that Plaintiff had the residual functioning capacity ("RFC") to perform light work, but limited such work to occasional climbing of stairs or ramps, occasional bending/balancing, stooping, crawling, kneeling or crouching, and no climbing of ropes, ladders or scaffolds. Id. The ALJ also limited Plaintiff to avoidance of hazardous machinery. Id. He found Plaintiff capable of occasionally pushing and pulling with his lower right extremity and frequently fingering, grasping, and holding with his right non-dominant hand. The ALJ determined that Plaintiff was capable of simple and routine

repetitive tasks in a low production occupation with no complex decision making responsibilities, constant change, or dealing with crisis situations. (Tr. 23). At Step Five, the ALJ determined that Plaintiff was incapable of performing past relevant work as a poultry packer, but that he was not disabled because he could perform the jobs of garment sorter, agricultural produce sorter, and seedling sorter. (Tr. 31).

**D. Discussion**

*1. Plaintiff's Assignments of Error*

Plaintiff seeks review of the Commissioner's final administrative decision, alleging that: 1) the ALJ improperly evaluated the medical opinion evidence; 2) the ALJ erred by not considering Plaintiff's illiteracy in the residual functional capacity, and 3) the ALJ's credibility assessment is unsupported by substantial evidence.

*2. First Assignment of Error: Assessment of Medical Evidence*

Plaintiff alleges that the ALJ made numerous errors relevant to the medical evidence in this case, including the degree of weight accorded to Consultative Examiner Dr. Joseph Apollo and orthopedic specialist Dr. Neal Goldberger, as well as to evidence of Plaintiff's use of a cane.

An ALJ must evaluate every medical opinion in the record. See 20 C.F.R. § 404.1527(c). "Medical opinions" within the meaning of social security determinations are "statements from physicians and psychologists or other acceptable medical sources that reflect judgments about the nature and severity of [the claimant's] impairment(s), including…symptoms, diagnosis and prognosis, what [claimant] can still do despite impairment(s), and [claimant's] physical or mental restrictions." 20 C.F.R. § 404.1527(a)(2). Under the governing regulations, "a treating physician's opinion on the nature and severity of the claimed impairment is entitled to controlling

weight if it is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in the record." <u>Mastro v. Apfel</u>, 270 F.3d 171, 178 (4th Cir. 2001) (citing 20 C.F.R § 416.927). Thus, "[b]y negative implication, if a physician's opinion is not supported by clinical evidence or if it is inconsistent with other substantial evidence, it should be accorded significantly less weight." <u>Craig v. Chater</u>, 76 F.3d 585, 590 (4th Cir. 1996). In such circumstances, the ALJ has discretion to give less weight to the testimony of a treating physician in the face of persuasive contrary evidence. <u>Mastro v. Apfel</u>, 270 F.3d 171, 178 (4th Cir. 2001).

A "treating physician" is a physician who has observed the Plaintiff's condition over a prolonged period of time. <u>Mitchell v. Schweiker</u>, 699 F.2d 185, 187 (4th Cir. 1983). "Although the treating physician rule generally requires a court to accord greater weight to the testimony of a treating physician … The ALJ may choose to give less weight to the testimony of a treating physician if there is persuasive contrary evidence." <u>Hunter v. Sullivan</u>, 993 F.2d 31, 35 (4th Cir. 1992), as amended (May 5, 1993) (internal citations omitted). If a treating physician's opinion is not given controlling weight, the ALJ is obligated to evaluate and weigh the medical opinion pursuant to the following factors: "(1) whether the physician has examined the applicant, (2) the treatment relationship between the physician and the applicant, (3) the supportability of the physician's opinion, (4) the consistency of the opinion with the record, and (5) whether the physician is a specialist." <u>Hines v. Barnhart</u>, 453 F.3d 559, 563 (4th Cir. 2006) (quoting <u>Johnson v. Barnhart</u>, 434 F.3d 650, 654 (4th Cir. 2005) (citing 20 C.F.R. § 404.1527 (2005))). If the ALJ does not accord controlling weight to a treating source's opinion, he must "give good reasons" for doing so. 20 C.F.R. §§ 404.1527(c)(2); 416.927(c)(2). The ALJ's explanation of these "good

reasons" "must contain specific reasons for the weight given to the treating source's medical opinion, supported by the evidence in the case record, and must be sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight." SSR 96-2P, 1996 WL 374188, at *5 (July 2, 1996).

"In most cases, the ALJ's failure to consider a physician's opinion (particularly a treating physician) or to discuss the weight given to that opinion will require remand." Love–Moore v. Colvin, No. 7:12–CV–104–D, 2013 WL 5350870, at *2 (E.D.N.C. Sept. 24, 2013) (citing Hill v. Astrue, 698 F.3d 2253, 1159–60 (9th Cir. 2012); Bowen v. Comm'r of Soc. Sec., 478 F.3d 742, 747, 750 (6th Cir. 2007); Hines v. Barnhart, 453 F.3d 559, 563 (4th Cir. 2006)). However, "[i]n some cases, the failure of an ALJ to explicitly state the weight given to a medical opinion constitutes harmless error, so long as the weight given to the opinion is discernible from the decision and any grounds for discounting it are reasonably articulated." Bryant v. Colvin, No. 5:11-CV-648-D, 2013 WL 3455736, at *5 (E.D.N.C. July 9, 2013) (internal quotation and citation omitted).

The court will first address Plaintiff's contention regarding Dr. Apollo's evaluation of Plaintiff's mental impairments. As explained by the ALJ, Dr. Apollo met with Plaintiff and conducted a psychological evaluation on August 29, 2012 at the request of the Social Security Administration. The ALJ relayed extensive amounts of information and findings from Dr. Apollo's evaluation in his written decision, but did not assign any particular level of weight to Dr. Apollo's report. (Tr. 28-29). The ALJ's decision included review of Dr. Apollo's findings as follows. Dr. Apollo noted several of Plaintiff's physical and personal characteristics, including that Plaintiff had good hygiene, was neatly dressed, had a quiet and pleasant demeanor, and used

a cane for ambulation. Dr. Apollo noted Plaintiff's medical and educational history, as well his daily activities and reports of social interactions. Dr. Apollo administered a Wechsler Adult Intelligence Scale IV test, which measures cognitive ability. Plaintiff's test results indicated that he had extremely low ability to process simple or routine visual material without making errors. Dr. Apollo noted in summarizing the test results, however, that from the information available, he was not able to determine Plaintiff's ability to understand, retain, and follow instructions or his ability to perform simple repetitive tasks. (Tr. 482). Dr. Apollo also specifically stated that "present test results may not be a valid estimation of current level of ability," (Tr. 481), and intimated several other times that additional information would be helpful in allowing him to arrive at more accurate conclusions. (Tr. 480-82). Ultimately, Dr. Apollo diagnosed Plaintiff with a cognitive disorder, substance abuse (for alcohol, cannabis, and cocaine), depressive disorder, and history of chronic pain and educational deficits. The ALJ discussed all of this information, and more, in his decision.

The ALJ also noted that Dr. Apollo completed a "Medical Source Statement of Ability to do Work-Related Activities (Mental)," wherein he stated several times that he could not determine Plaintiff's abilities to carry out certain activities without further information. (Tr. 29, 485-86). Thus, while Dr. Apollo's examination yielded much information about Plaintiff's mental history, it did not offer any medical conclusions or opinions as to the impact of Plaintiff's conditions on his ability to perform work-related or daily activities. See Phillips v. Colvin, No. 3:13-CV-00307-MOC, 2014 WL 1713788, at *6 (W.D.N.C. Apr. 30, 2014) (noting that the medical evidence at issue "reflects that plaintiff had been diagnosed with mental impairments. As such note does not contain any medical conclusion or opinion concerning the impact of such

diagnosis—either by expressing an opinion as to the impact on plaintiff's ability to do work-related activities or perform daily activities—such is not a medical opinion within the meaning of 20 C .F.R. § 416.927(a)(2)." (citing <u>Money v. Astrue</u>, No. 5:09–cv–00042, 2009 WL 7449241, at *7 (W.D.N.C. Dec. 9, 2009), <u>adopted</u>, 2011 WL 666729 (W.D.N.C. Feb. 14, 2011))). The only opinion that Dr. Apollo offered as to Plaintiff's capabilities was that Plaintiff was unable to manage his own funds. (Tr. 482). The court finds that Dr. Apollo's exam records, which explicitly indicate that more information is required for a complete understanding of Plaintiff's limitations, are not "medical opinions" within the meaning of 20 C.F.R. § 416.927(a)(2) or § 404.1527(c)(2). They do not include statements that reflect judgment about the nature and severity of Plaintiff's impairments; in fact, they indicate that such judgment is impossible without further information. Accordingly, the court finds that the ALJ was not required to assign Dr. Apollo's treatment records any particular weight.

Second, the court addresses Plaintiff's argument that the ALJ erred by not assigning any particular weight to the findings of Dr. Goldberger. Dr. Goldberger treated Plaintiff for neck and back pain from October 2010 (Tr. 336) to April 2011 (Tr. 437). Because he observed Plaintiff's condition over a prolonged period of time, he qualifies as a treating physician. <u>Mitchell v. Schweiker</u>, 699 F.2d 185, 187 (4th Cir. 1983). The ALJ thoroughly discussed Dr. Goldberger's findings, diagnoses, and treatment measures in his decision. <u>See</u> (Tr. 27) (discussing Dr. Goldberger's diagnoses of cervical nerve root irritation secondary to cervical disc osteophyte complexes and spinal stenosis, as well as lumbar protrusions, and appropriate treatment) (referencing Tr. 331, 332, 337, 437)). The ALJ noted that on Plaintiff's final visit to Dr. Goldberger in April 2011, Plaintiff had intermittent pain in his legs, as well as some numbness

and tingling, but that he did not want to have any injections or further treatment. (Tr. 27, 437). Dr. Goldberger further noted that Plaintiff was at "maximum medical improvement" after undergoing "fairly extensive conservative care." (Tr. 437).

The parties' dispute whether Dr. Goldberger's statements in his reports qualify as "medical opinions" within the meaning or 20 C.F.R. § 416.927(a)(2) or § 404.1527(c)(2). Here, the court finds it appropriate to consider Dr. Goldberger's statements about Plaintiff's pain levels, ranges of motion, diagnoses, treatment measures, and rate of recovery as medical opinions, in that they reflect judgments about the nature and severity of Plaintiff's limitations and his need for treatment. Though Dr. Goldberger does not indicate any particular physical limitations on Plaintiff's ability to perform work-related or daily activities, see Phillips, 2014 WL 1713788, at *6, the court finds that Dr. Goldberger's statements, unlike those of Dr. Apollo, at least imply limitations on what Plaintiff is able to do in light of his impairments (i.e. through reports of motion, strength, and reflexes). Under a broad interpretation of "medical opinion," then, Dr. Goldberger's statements qualify as medical opinions for the purpose of substantial evidence review.

Plaintiff alleges that the ALJ erred by not assigning a particular weight to Dr. Goldberger's opinion, and that had he done so, he would have issued a more restrictive RFC. Plaintiff also argues that Dr. Goldberger's findings lend credibility to Plaintiff's subjective complaints of pain. The court finds little support for such contentions.

As noted above, an ALJ's failure to consider a treating physician's opinion or to discuss the weight given to that opinion generally requires remand. However, where the weight given to the opinion is discernible from the decision and any grounds for discounting it are reasonably

articulated, the ALJ's failure to explicitly state the weight given to a medical opinion may constitute harmless error. Bryant v. Colvin, No. 5:11-CV-648-D, 2013 WL 3455736, at *5 (E.D.N.C. July 9, 2013). The court finds that such is the case here for several reasons. First, the court is satisfied that the ALJ carefully considered and took into account all of Dr. Goldberger's medical findings and that his RFC reflects such consideration. The ALJ's written decision clearly contemplates Dr. Goldberger's diagnoses and treatment measures, which indicate, generally speaking, that Plaintiff suffered from back and neck pain resulting from a car accident. The record is full of medical evidence relating to these injuries, much of which the ALJ thoroughly discussed in his decision. Indeed, the ailments for which Dr. Goldberger treated Plaintiff (pain related to his cervical and lumbar discs) are related to, if not derived from, the disc herniation of the cervical and lumbar spine that the ALJ found to be a "severe impairment" at Step Two. (Tr. 22). Second, the court notes that the ALJ stated, in formulating the RFC, he had "considered opinion evidence in accordance with the requirements of 20 CFR 404.1527 and 416.927 and SSRs 96-2p. 96-5p, 96-6p, and 06-3p," (Tr. 23), and later on in his discussion of the medical evidence that there were "no medical opinions indicating disability and no function by function assessments demonstrating limitations precluding [Plaintiff's] ability to perform light work." (Tr. 30). Thus, even though the ALJ did not ascribe any particular weight to Dr. Goldberger's opinion, he clearly contemplated the appropriate weight for all medical opinions of record, including that of Dr. Goldberger, as they related to Plaintiff's disability.

Here, the court finds that the ALJ did indeed err by not ascribing any particular weight to the opinion evidence of treating physician Dr. Goldberger, but that such error was harmless. After review of the record and the ALJ's decision, the court can determine that the ALJ ascribed

11

at least some weight to Dr. Goldberger's opinion and that the ALJ's RFC reflects such consideration. The court does not find that remand is necessary based upon the ALJ's failure to articulate the weight ascribed to Dr. Goldberger's opinion, especially given that the RFC ultimately formulated incorporates the severe limitations relating to Plaintiff's back injuries, which are the subject of Dr. Goldberger's treatment. Thus, the ALJ's failure to assign a particular weight to Dr. Goldberger's opinion constitutes harmless error in this instance.

The court now addresses Plaintiff's contention that the ALJ erred by not making a weight assessment regarding Plaintiff's use of a cane to ambulate. As Plaintiff notes, Social Security Ruling 96-9 requires that in formulating the RFC, ALJs must consider, among other things, an individual's use of medically-required hand-held assistive devices. SSR 96-9; Timmons v. Colvin, No. 3:12-CV-609, 2013 WL 4775131, at *7 (W.D.N.C. Sept. 5, 2013). Notably, the use of an assistive device must be required in order for it to affect a claimant's RFC. SSR 96-9.  To be required, there must be medical documentation establishing the need for a hand-held assistive device to aid in walking or standing, and describing the circumstances for which it is needed (i.e., whether all the time, periodically, or only in certain situations; distance and terrain; and any other relevant information)." SSR 96-9. Additionally, "even if a cane is prescribed, it does not necessarily follow that it is medically required." Wimbush v. Astrue, No. 4:10-CV-00036, 2011 WL 1743153, at *3 (W.D. Va. May 6, 2011) (citations omitted).

For clarity's sake, the court first notes that a claimant's use of an assistive device is not, as Plaintiff appears to assume, "opinion evidence" within the meaning of 20 C.F.R. § 404.1527, and therefore, is not entitled to the same weight analysis required for medical opinions from physicians. It is, however, entitled to consideration as described above. Here, Plaintiff testified at

his hearing that he received a cane from a doctor at the Carolina Bone and Joint Clinic. (Tr. 62). The medical records from that clinic, however, make no note of any cane being provided or prescribed to Plaintiff. See (Tr. 329-343, 406-444). On the contrary, those records uniformly state that Plaintiff's gait was "normal" every time it was evaluated. (Tr. 329, 338, 340, 343, 406, 408, 417, 425, 435, 441). One note explicitly states that Plaintiff was not using an "ambulatory assistive device" when he presented for treatment. (Tr. 338). The ALJ's decision discusses the fact that Plaintiff has used a cane at times. See (Tr. 25, 27, 28). However, neither the ALJ nor Plaintiff, by his motion, point to any medical documentation in the record establishing that Plaintiff needed a hand-held assistive device, or describing any circumstances relating to such a need. Though the record does indeed indicate that Plaintiff uses a cane or crutch, see, e.g., (Tr. 62, 448, 477), nothing indicates that it is "required" within the meaning of the Social Security Rulings or relevant decisions. See, e.g., Wimbush v. Astrue, No. 4:10CV00036, 2011 WL 1743153 (W.D. Va. May 6, 2011); Eason v. Astrue, 2008 WL 4108084 (E.D.N.C. 2008)). As such, the ALJ was not required to make any particular assessments regarding Plaintiff's use of a cane in formulating the RFC.

In light of the above analysis, the court overrules Plaintiff's assignments of error regarding the ALJ's analysis of the medical evidence.

### 3. Plaintiff's Second Assignment of Error: Consideration of Illiteracy

Plaintiff next argues that the ALJ erred by failing to find Plaintiff's alleged illiteracy a severe impairment to be factored into the RFC and by failing to include illiteracy in the occupational restrictions when questioning the vocational expert. Regarding Plaintiff's contention that illiteracy should have been considered at Step Two, the court notes that

"[i]lliteracy is not…an impairment, but is instead a vocational factor that is considered when determining whether there are other jobs in the national economy that a claimant can perform. 20 C.F.R. § 404.1564(b)(1). The ALJ was not required to consider plaintiff's illiteracy as an impairment, either severe or non-severe." Gann v. Astrue, No. 1:09CV355, 2010 WL 3811942, at *11 (W.D.N.C. Sept. 1, 2010) report and recommendation adopted, No. 1:09CV355, 2010 WL 3811515 (W.D.N.C. Sept. 27, 2010). Here, the ALJ's RFC accounts for Plaintiff's mental limitations, as it restricts Plaintiff to work involving "simple, routine and repetitive tasks in a low production occupation with no complex decision making responsibilities, constant change or dealing with crisis situations." (Tr. 23). The ALJ was not required to include any further limitations stemming from illiteracy. As such, the court finds that Plaintiff's contention regarding illiteracy at Step Two is without merit.

Regarding the hypothetical questions posed to the vocational expert, the court notes that the ALJ did, in fact, address Plaintiff's limitations regarding reading and writing ability as a factor to be considered at Step Five. After the vocational expert stated that someone with Plaintiff's limitations could perform such jobs as garment sorter, agricultural sorter, and seedling sorter, the ALJ asked, "if an individual were illiterate, could they perform any of the three [jobs] that you provided?" (Tr. 65). The vocational expert responded, "Yes…I don't think reading is required in this work." Id. Plaintiff's counsel subsequently asked if someone could perform the sample jobs if he could not write. Id. The vocational expert responded that writing was not required in the jobs identified. Id. Plaintiff's counsel posed a further hypothetical question to the vocational expert, adding limitations including, in pertinent part, "illiteracy," and inquiring whether someone like Plaintiff could perform the jobs identified. Id. Again, the vocational expert

stated that illiteracy had no effect on his testimony. (Tr. 66). The court is therefore satisfied that the ALJ properly considered Plaintiff's education and literacy levels at Step Five.

  i.  *Reliance on Vocational Expert Testimony*

  Plaintiff contends that the vocational expert's testimony as to the level of literacy and language proficiency required for the jobs available to Plaintiff are inconsistent with the levels required by the Dictionary of Occupational Titles ("DOT"), and that the ALJ erred by failing to address such a discrepancy pursuant to Social Security Ruling 00–4p.

  SSR 00–4p states that the Commissioner will rely on both the DOT and vocational expert testimony to determine whether a Social Security claimant can find work in the national economy suited to his residual functional capacity. Noting that information from the two sources should generally be consistent, SSR 00–4p nonetheless provides, "[w]hen there is an apparent unresolved conflict between [vocational expert] evidence and the DOT, the adjudicator must elicit a reasonable explanation for the conflict before relying on the [vocational expert] evidence to support a determination or decision about whether the claimant is disabled." SSR 00-4p. The ruling notes that the ALJ "will inquire, on the record, as to whether or not there is such consistency." Id.  It further provides that neither the DOT nor the vocational expert's testimony "automatically 'trumps' when there is a conflict," but rather, that the ALJ must resolve the conflict by deciding if the vocational expert's explanation for the conflict is reasonable and by providing a basis for relying on the testimony rather than the DOT information. Id. See also Fisher v. Barnhart, 181 F. App'x 359, 365 (4th Cir. 2006) (unpublished). Furthermore,

> When vocational evidence provided by a [vocational expert] is not consistent with information in the DOT, the adjudicator must resolve this conflict before relying on the [vocational expert] evidence to support a determination or decision that the individual is or is not disabled. The adjudicator will explain in the determination

> or decision how he or she resolved the conflict. The adjudicator must explain the
> resolution of the conflict irrespective of how the conflict was identified.

SSR 00-4p. Finally, and of particular relevance to this case, the ruling notes that the "DOT lists

maximum requirements of occupations as generally performed, not the range of requirements of

a particular job as it is performed in specific settings." SSR 00-4p.

As explained above, the vocational expert testified that illiteracy would not affect a

person's ability to perform the three identified jobs. (Tr. 65-67). However, the DOT indicates

that all such jobs are "Language Level 1" jobs, which require reading 95-120 words per minute.

See Def. Mot. Exhibits 1, 2, 3 (##14-1, 14-2, 14-3) (Dictionary of Occupational Titles entries for

all jobs identified by vocational expert). Plaintiff notes that though his counsel did not make any

objections to the vocational expert's testimony at the hearing about the level of literacy required

for these jobs, counsel did submit a supplemental brief on this point six days after the hearing.

(Tr. 312-13). Plaintiff argues that the ALJ erred by not evaluating the inconsistency between the

vocational expert's testimony and the DOT information, and that the ALJ's statement in his

decision that "the vocational expert's testimony is consistent with the information contained in

the [DOT]" (Tr. 31) is inaccurate, thus requiring remand.

The court first notes that the ALJ did, in fact, ask the vocational expert at the hearing

whether his testimony was consistent with the DOT. (Tr. 67-68). The vocational expert stated

that it was. Id. Other district courts within this circuit have found such a colloquy sufficient to

satisfy the ALJ's obligation to investigate whether any conflict existed. See, e.g. Patten v.

Comm'r of Soc. Sec., No. 1:13-CV-236, 2014 WL 5495054, at *6 (N.D.W. Va. Oct. 30, 2014)

("Before giving the hypothetical, the ALJ…[stated,] 'if your testimony does not agree with the

[DOT], you have to inform us of that fact and explain why it differs.' The VE responded that she

would. From these lines of the transcript alone, the ALJ satisfied his obligations under SSR 00–4p.") (internal citations omitted); Smith v. Colvin, No. 3:13-CV-17, 2013 WL 5966427, at *4 (N.D.W. Va. Nov. 8, 2013) ("[SSR] 00–4p does not require an ALJ to 'conduct an independent investigation into the testimony of witnesses' nor is an ALJ required to explain how a conflict was resolved if 'the plaintiff did not bring the vocational expert's mistake to the ALJ's attention.'") (citing Boggs v. Astrue, No. 2:12–CV–25, 2012 WL 5494566 (N.D.W.Va. Nov. 13, 2012)). Even if the ALJ had an obligation to inquire further, the court is not entirely convinced that a true conflict exists in this case in light of the fact that SSR 00-4 explicitly states that the "DOT lists maximum requirements of occupations as generally performed." SSR 00-4p, emphasis added. Here, Plaintiff's argument seems to assume that the DOT information regarding reading requirements constitutes the minimum level of comprehension required for certain occupations, when in fact the opposite is true. The court finds that a conflict exists only insofar as a person who qualifies as "illiterate" under the governing regulations would likely not be able to achieve the maximum level of reading required by the DOT.

Assuming that a conflict exists and that the ALJ had an obligation to address such conflict in light of Plaintiff's filing of his post-hearing brief, the court nonetheless finds that the ALJ's failure to explain any reconciliation of a conflict is harmless because the ALJ would have reached the same result regarding disability notwithstanding such error. See Renfrow v. Astrue, 496 F.3d 918, 921 (8th Cir. 2007) (finding ALJ's failure to ask about conflict between the vocational expert testimony and DOT was harmless error because no conflict existed). Plaintiff's argument about the conflict between the vocational expert's testimony and the DOT information on reading requirements is premised upon a finding that Plaintiff is illiterate. Plaintiff argues that

because he is illiterate, the ALJ's failure to reconcile his abilities with those required for the available jobs constitutes harmful error. As the ALJ stated in his decision, however, he did not find Plaintiff to be illiterate, but rather, to be of "limited education" within the meaning of 20 C.F.R. § 404.1564. (Tr. 31). Section 404.1564 provides different classifications of education levels for the Commissioner's consideration as a vocational factor, and includes definitions for "illiteracy" and "limited education." The regulations define a person with "limited education" as possessing "ability in reasoning, arithmetic, and language skills, but not enough to allow a person with these educational qualifications to do most of the more complex job duties needed in semi-skilled or skilled jobs." 20 C.F.R. § 404.1564(b)(2). Generally, people who have completed 7th grade through the 11th grade level of formal education are considered to have a limited education. Id. By comparison, the regulations define "illiteracy" as the inability to read or write. Id. § 404.1564(b)(1). A person is illiterate if he or she "cannot read or write a simple message such as instructions or inventory lists even though the person can sign his or her name. Generally, an illiterate person has had little or no formal schooling." Id.

Plaintiff testified at the hearing that he can write his name and nothing else, that his wife reads him his written correspondence, and that she has helped him fill out job applications in the past due to his inability to write. (Tr. 53). However, Plaintiff also stated in a Disability Report that he can "read and understand English" and "write more than [his] name in English." (Tr. 257). He also testified at the hearing that he received formal schooling through ninth or tenth grade, and his educational records indicate that he received formal schooling up to the eleventh grade. (Tr. 24, 44, 295). Though Plaintiff argues that "the record clearly reflects sufficient evidence of illiteracy…such that it is conceivable that one could conclude that [Plaintiff] is

illiterate," Pl. Resp. (#15) at 1, the record also supports a finding that Plaintiff is of "limited education" within the meaning of the Social Security regulations. 20 C.F.R. § 404.1564(b)(3). As noted above, it is not the province of this court to reweigh the evidence before the Commissioner, but instead only to ensure application of the correct legal standards and that the Commissioner's decision is supported by substantial evidence. Richardson v. Perales, 402 U.S. 389, 390 (1971); Hays v. Sullivan, 907 F.2d 1453, 1456 (4th Cir. 1990). Here, substantial evidence supports a finding that Plaintiff is of limited education.

In light of the fact that the ALJ found Plaintiff not to be illiterate, the vocational expert's testimony regarding the impact of illiteracy on the jobs available to Plaintiff are irrelevant. Thus, any discrepancy between the DOT and the vocational expert's testimony would have had no impact on the ALJ's ultimate determination of Plaintiff's disability. The court, finding that any error committed by the ALJ pursuant to SSR 00-4p was harmless, will not disturb his decision. Accordingly, for the reasons explained above, the court finds that substantial evidence exists to support the ALJ's consideration of Plaintiff's illiteracy and will therefore overrule Plaintiff's assignments of error in this regard.

### 4. Plaintiff's Third Assignment of Error: Credibility Determination

Finally, Plaintiff alleges that the ALJ erred in making an assessment of Plaintiff's credibility and that thus, the ALJ's decision is unsupported by substantial evidence.

The ALJ is solely responsible for determining the RFC of a claimant. 20 C.F.R. § 404.1546(c). In determining RFC, the ALJ must consider the functional limitations and restrictions resulting from the claimant's medically determinable impairments. SSR 96-8p. Inasmuch as RFC is determined at the fourth step of the sequential evaluation process, the

burden is on the claimant to establish that he or she suffers from a physical or mental impairment which limits functional capacity.  Hall v. Harris, 658 F.2d 260, 264 (4th Cir. 1981).

In reviewing Plaintiff's claim regarding the ALJ's credibility determination, the court notes at the outset that because the ALJ "had the opportunity to observe the demeanor and to determine the credibility of the claimant, the ALJ's observations concerning these questions are to be given great weight." Shively v. Heckler, 739 F.2d 987, 989 (4th Cir. 1984).  The court evaluates claims of pain and other subjective symptoms under the two-step process developed by the Fourth Circuit in Craig v. Chater, 76 F.3d 585, 589 (4th Cir. 1996), which corresponds with the Commissioner's relevant rulings and regulations. See 20 C.F.R § 404.1529; SSR 96-7p.[1]

The first step requires the ALJ to determine whether there is "objective medical evidence showing the existence of a medical impairment which could reasonably be expected to produce the actual pain, in the amount and degree, alleged by the claimant." Craig, 76 F.3d at 594.  If the ALJ finds such an impairment, he must then proceed to the second step and assess "the intensity and persistence of the claimant's pain, and the extent to which it affects [his] ability to work." Id. at 595; see also 20 C.F.R. §§ 416.929(c)(1), 404.1529(c)(1); SSR 96-7p. The ALJ must consider the following: (1) a claimant's testimony and other statements concerning pain or other subjective complaints; (2) claimant's medical history and laboratory findings; (3) any objective medical evidence of pain; and (4) any other evidence relevant to the severity of the impairment. Craig, 76 F.3d at 595; 20 C.F.R. § 404. 1529(c); SSR 96-7p.  The term "other relevant evidence"

_____

[1] "The purpose of this Ruling is to clarify when the evaluation of symptoms, including pain, under 20 CFR 404.1529 and 416.929 requires a finding about the credibility of an individual's statements about pain or other symptom(s) and its functional effects; to explain the factors to be considered in assessing the credibility of the individual's statements about symptoms; and to state the importance of explaining the reasons for the finding about the credibility of the individual's statements in the disability determination or decision."  S.S.R. 96-7p (statement of purpose).

includes: a claimant's activities of daily living; the location, duration, frequency and intensity of their pain or other symptoms; precipitating and aggravating factors; the type, dosage, effectiveness and side effects of medications taken to alleviate their pain and other symptoms; treatment, other than medication, received; and any other measures used to relieve their alleged pain and other symptoms. Craig, 76 F.3d at 595.

If the ALJ does not find a claimant's statements to be credible, the ALJ must provide specific reasons supported by the evidence. 20 C.F.R. § 404.1529(c)(4); SSR 96–7P; see also Hammond v. Heckler, 765 F.2d 424, 426 (4th Cir.1985) ("credibility determinations…should refer specifically to the evidence informing the ALJ's conclusion"). "This duty of explanation is always an important aspect of the administrative charge, and it is especially crucial in evaluating pain, in part because the judgment is often a difficult one, and in part because the ALJ is somewhat constricted in choosing a decisional process." Hammond v. Heckler, 765 F.2d 424, 426 (4th Cir. 1985) (internal citations omitted).

Here, at the first step of Craig, the ALJ found that Plaintiff's medically determinable impairments could reasonably be expected to cause his alleged symptoms. (Tr. 30). At the second step, the ALJ determined that Plaintiff's "statements concerning the intensity, persistence and limiting effects of [his] symptoms are not entirely credible for the reasons explained in this decision." Id. As noted above, the ALJ is tasked with the duty to provide specific reasons for discrediting a claimant's testimony. While generally, such boilerplate language is unhelpful to a reviewing court engaging in a substantial evidence review, the court here finds that the ALJ has satisfied his duty of explanation through his otherwise thorough and articulate written decision.

Throughout his decision, the ALJ discussed Plaintiff's subjective allegations of pain and provided appropriate analyses of why he refused to give them full credit. For example, he discussed in detail Plaintiff's testimony and other statements regarding his injuries resulting from the November 2009 car accident, as well as objective medical scans showing abnormal findings in his cervical and lumbar spine. (Tr. 24-26). Throughout that discussion, the ALJ also mentioned evidence inconsistent with those statements and scans, juxtaposing that evidence with (among other things): medical treatment notes stating that Plaintiff "walked with an even gait;" "mild" medical findings; a "release from active care;" the fact that he did not always appear to need a cane; "good and equal strength" in his extremities; and general improvement in his condition. (Tr. 25-30).

The ALJ also discussed opinion evidence from several medical consultants that revealed inconsistencies in Plaintiff's claims of total disability. (Tr. 28). For example, the ALJ discussed reports involving Plaintiff's physical abilities—including opinion evidence that he could perform light work, sit, stand, or walk for up to six hours in an eight-hour workday, and had no postural, manipulative, visual, communicative, or environmental limitations. (Tr. 28.) The ALJ also discussed reports regarding Plaintiff's mental abilities, pointing out, among other things, his work history and the fact that he had never lost a job due to mental or physical limitations. (Tr. 28). Such findings undermine Plaintiff's claims of cognitive limitations.

The ALJ also discussed inconsistencies in Plaintiff's testimony. For example, the ALJ pointed out that although Plaintiff does not have a driver's license, he was the driver in both of the car accidents he was involved in. (Tr. 30, 319, 417). The ALJ also noted that Plaintiff has responded well to conservative treatment measures, (Tr. 30, 437), which is an appropriate

factor to take into account. <u>See</u> <u>Wilson v. Comm'r, Soc. Sec. Admin.</u>, No. 97-1674, 1998 WL 647031, at *1 (4th Cir. 1998) (unpublished) (stating that claimant's doctors "recommended only conservative treatment, which does not suggest that his pain is…disabling"); <u>McKenzie v. Comm'r Soc. Sec. Admin.</u>, No. 99-3400, 2000 WL 687680, *4 (6th Cir. 2000) (finding that Plaintiff's complaints of disabling pain were "undermined by his non aggressive treatment," which included only medication and chiropractic treatment). Similarly, the ALJ cited Plaintiff's statement to his pain management doctor that "he did not want to have any more injections or any more treatment." (Tr. 30, 437). The ALJ properly coupled that statement with evidence that Plaintiff "was doing reasonably well" at the time and was experiencing only "intermittent" symptoms, thus providing further support for the credibility finding. (Tr. 30, 441). Accordingly, the court finds that the ALJ conducted the proper analysis and provided the proper explanation in support of his credibility determination.

Plaintiff also claims that the ALJ erred by not including any of the symptoms that Plaintiff testified about in the RFC. The court notes, however, that an RFC is a measure of what an individual can do, despite his or her impairments, not a recitation of the impairments or symptoms themselves. 20 C.F.R. § 404.1545(a); <u>Hines v. Barnhart</u>, 453 F.3d 559, 562 (4th Cir. 2006); <u>Medina v. Astrue</u>, 584 F. Supp. 2d 814, 821 (W.D.N.C. 2008). Accordingly, the ALJ only included limitations arising out of Plaintiff's impairments and symptoms, as opposed to the impairments or symptoms themselves, in the RFC. For example, he limited Plaintiff to light work in order to account for his back impairment and associated pain. (Tr. 23). He also limited Plaintiff to "simple, routine repetitive tasks in a low production occupation with no complex decision making responsibilities, constant change or dealing with crisis situations" to account for

his "limited education." (Tr. 23). The ALJ's RFC thus properly accounts for all of the limitations supported by the record.

In light of the above analysis, the court overrules Plaintiff's assignments of error regarding the ALJ's credibility determination.

### E.  Conclusion

The court has carefully reviewed the decision of the ALJ, the transcript of proceedings, plaintiff's motion and brief, the Commissioner's motion and brief, and plaintiff's assignments of error.  Review of the entire record reveals that the decision of the ALJ is supported by substantial evidence.  See Richardson v. Perales, 402 U.S. 389, 390 (1971); Hays v. Sullivan, 907 F.2d 1453, 1456 (4th Cir. 1990).  Finding that there was "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion," Perales, 402 U.S. at 401 (internal citations omitted), Plaintiff's Motion for Summary Judgment will be denied, the Commissioner's Motion for Summary Judgment will be granted, and the decision of the Commissioner will be affirmed.

**ORDER**

**IT IS, THEREFORE, ORDERED** that

(1)      the decision of the Commissioner, denying the relief sought by Plaintiff, is **AFFIRMED**;

(2)      Plaintiff's Motion for Summary Judgment (#12) is **DENIED**;

(3)      the Commissioner's Motion for Summary Judgment (#13) is **GRANTED**; and

(4)      this action is **DISMISSED**.

Signed: March 18, 2015

Max O. Cogburn Jr.
United States District Judge